UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BREIDEL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-23 |
| | § | |
| HARRIS COUNTY SHERIFF'S OFFICE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Pending before the Court is Defendant McLennan County, Texas's Motion to Dismiss for Improper Venue, Alternative Motion to Transfer Venue, and Alternative Motion to Dismiss for Failure to State a Claim (Doc. 9). Also pending before the Court is Defendant Harris County, Texas's Motion for Summary Judgment (Doc. 16) and Motion to Strike (Doc. 21), and McLennan County's Motion for Summary Judgment, Subject to its Motion to Dismiss (Doc. 18). Having considered the motions, the responses, the replies, and the applicable law, the Court concludes that McLennan County's motion to dismiss should be denied and both Harris County's and McLennan County's motions for summary judgment should be granted.

## I. Background

Plaintiff Michael Breidel filed this civil rights action under 42 U.S.C. § 1983 against Defendants Harris County, Texas, Harris County Sheriff's Office, Extradition Transport Services, John Does 1 and 2 (employees of Extradition Transport Services), McLennan County Sheriff's Office, McLennan County, Texas, and John Doe, M.D., a doctor purported to work for McLennan County, Texas (collectively, "Defendants"). Compl., Doc. 1. The basic allegation underlying Briedel's complaint is that he was denied post-surgical medical care during his

detention in the McLennan and Harris County Jails.

In his complaint, which reads more like a diary than a pleading, Breidel describes the following events which gave rise to his claims: He was arrested under a capias warrant by the McLennan County Sheriff's Department on January 4, 2011,[1] six weeks after having cervical spinal fusion surgery.  First Am. Compl., Doc. 5 at 2.  At the time of his arrest, Breidel informed the arresting officers that he was under post-surgical care and brought with him his medication, a "bone stimulator," and a neck brace.  *Id.*  During the course of his ten-day stay at the McLennan County Jail, he was sporadically denied medication, suffered neck pain and muscle spasms, was forced to sleep on a one-inch thick mattress on a steel frame, and was unable to sleep.  *Id.* at 2–3.  He, however, was allowed to wear his neck brace and, at times, his bone stimulator.  *Id.* at 2.  Breidel was also seen by John Doe, M.D. at least twice and spent the majority of his stay in medical segregation.  *Id.* at 2–3.  According to Breidel, John Doe, M.D. ignored his surgeon's "protocol for pain management" and informed Breidel that he would not be able to receive his prescriptions for Vicodin or Ambien, as they are controlled substances at the jail.  *Id.* at 2.

On January 14, the eleventh day of his detention, Breidel was transported by Extradition Transport Services in a van from McLennan County Jail in Waco, Texas to Harris County Jail in Houston, Texas.  *Id.* at 2–3.  Breidel was permitted to wear his bone stimulator and neck brace for the duration of his transport, which he claims lasted approximately twenty-four hours, but he was in constant pain.  *Id.*  He was given a dose of paid medication midway through the trip, but he complains that Extradition's employees, John Does 1 and 2, were insensitive to his medical condition and unresponsive to his requests for addition pain medication and breaks.  *Id.* at 2–3.

On January 15, 2011, Breidel arrived at Harris County Jail.  Breidel complains that

---

[1] Plaintiff was arrested for failure to appear at a properly set and noticed hearing regarding his failure to pay child support.  Court Docs. in Case No. 2004-29324, Doc. 16, Ex. B at 1.

during the course of his five-day stay at Harris County Jail he was strip-searched, was forced to sleep without a mattress for one night, was occasionally denied medication and/or his bone stimulator, endured severe paid, was unable to sleep, and got into a physical altercation with another inmate. *Id.* at 6–7. According to his complaint, the other inmate "jumped up and grabbed [Breidel] by the [neck] brace at the throat area, pulled on [his] brace and swung at [his] head. [Breidel] grabbed a handful of [the inmate's] hair and hit him three times real quick. [The inmate] went down, holding his mouth and said 'enough, enough.'" *Id.* at 6.

Breidel also complains generally about the poor conditions and poor treatment of inmates at Harris County Jail. *Id.* He states that upon his arrival, he was held in a "cell tank" with approximately 60–80 other inmates where he witnessed the rape of another inmate. *Id.* at 5. Later that day, while being held in another cell tank with approximately 40 other inmates, he witnessed an inmate die during an epileptic episode after his cries for his "shot and medicine" were ignored by the guards. *Id.* While at the Harris County Jail, Breidel was seen by a physician and a psychiatrist. *Id.* at 6. The physician gave Breidel Vicodin for his pain and the psychiatrist gave him a prescription for sleep and another for anxiety. *Id.* He also received one dose of all of his previously prescribed medications. *Id.* Breidel was released on January 19, 2011 after posting bond. *Id.* at 8; Court Docs. in Case No. 2004-29324, Doc. 16, Ex. B at 4.

Breidel alleges that all Defendants violated his constitutional rights by using excessive force against him, failing to protect him, and making "unreasonable use of search and seizure." Doc. 5 at 8. Breidel also alleges that Defendant John Doe M.D. "acted with gross negligence under color of law in depriving Breidel of his needed and prescribed medications." *Id.* He contends that both of the Defendant Counties, by and through their respective Sheriff's Offices, have a notable history of detainee/prisoner abuse. *Id.* He claims that as a result of the denial of

his post-surgical medical care, he was required to undergo additional spinal injections, physical therapy, and spinal lumbar surgery. *Id.* Additionally, he claims that he now suffers from post-traumatic stress disorder. *Id.* He requests damages for pain and injury, loss of income, loss of future income, medical expenses, punitive damages, and attorney's fees in an amount not less than $623,234.00. *Id.* at 8–9.

## II.     McLennan County's Motion to Dismiss for Improper Venue

Defendant McLennan County moves to dismiss Breidel's claims against it pursuant to Rule 12(b)(3) for improper venue. In the alternative, McLennan County argues that the Court should sever and transfer the action against it to the Western District of Texas pursuant to Rule 21, which allows a court to sua sponte sever any claim against a party.

A defendant may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3). FED. R. CIV. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation omitted). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x. 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). If venue is improper, 28 U.S.C. § 1406(a) instructs courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision to dismiss or transfer a case lies within the court's discretion. *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing *Dublin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967)).

Since 42 U.S.C. § 1983 contains no specific venue provision, venue in this case is determined under the general venue state, 28 U.S.C. § 1391(b), which provides:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Breidel argues that venue is proper in the Southern District of Texas under subsection (b)(1) since Defendants Harris County Sheriff's Office and Harris County reside in the Southern District of Texas and all named Defendants are residents of Texas. Doc. 14 at 1–2.

McLennan County claims that venue in the Southern District is improper because Breidel's claims against it are unrelated to his claims against the Harris County Defendants and do not arise from actions or omissions in this district. Doc. 9 ¶ 1.3–1.5. It argues that Breidel's claims against the two counties involve different actors and allegations and took place in different districts. *Id.* As such, it argues that it is improperly joined under Rule 20(a)(2), which governs permissive joinder of defendants.

Rule 20(a)(2) provides:

"Persons…may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2). A "series of transactions or occurrences," means some connection or logical relationship between various transactions or occurrences such as a "nucleus of operative facts or law." *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993). Rule 20 is

intended to be liberally construed in order to promote trial convenience. *Walker v. City of Hous.*, 341 F. Supp. 1124, 1132 (S.D. Tex. 1971).

McLennan County maintains that Breidel's claims against it should be dismissed because "Plaintiff cannot combine separate and discrete complaints against multiple defendants into a single complaint to obtain the venue of his choosing." *Id.* ¶ 1.5. In support of its motion, McLennan County relies in part on *Tolston v. Creek*, No. 3:09-CV-2151, 2010 WL 2195486, at *2–3 (W.D. La. April 28, 2010) (holding plaintiff's claims for mistreatment at a facility located in one district were not related to his claims for mistreatment at a facility in another district and venue was improper) and *Williams v. Schwarzenegger*, No. C-10-4054, 2011 WL 856263, at *1 (N.D. Cal. March 9, 2011) (dismissing claims that arose in prisons outside the judicial district for improper venue). Neither of these cases, however, alleged that defendants were jointly and severally liable for a single injury to the plaintiff or that the treatment at the different facilities was related in any way. Breidel argues that McLennan County is properly joined in this action as he asserts claims for damages for his injuries against Defendants jointly, severally, or in the alternative, within the meaning of Rule 20(a)(2)(A), and to what degree each Defendant is liable will be a question for the jury to decide. Pl.'s Resp. ¶ 2.3. In addition, he argues that severance of the case would be unduly burdensome and costly for him. *Id.*

Examining the facts of this case, the Court finds that the complaint shows that Defendants are properly joined within the meaning of Rule 20(a)(2). Plaintiff asserts a right to relief against all Defendants jointly, the allegations arise out of a common nucleus of operative facts, and there are common questions of both law and fact. In addition, Plaintiff has met his burden to show that venue is proper in this district as at least one of the Defendants resides herein and all Defendants are residents of the State in which this district is located. Defendant

McLennan County's motion to dismiss for improper venue is denied. Likewise, its motion to transfer venue pursuant to Rule 21 is denied.

Rather than rule on McLennan County's motion to dismiss for failure to state a claim, the Court will consider McLennan County's motion for summary judgment in conjunction with Harris County's motion for summary judgment in order to reach the merits of the case.

### III. Motions for Summary Judgment

Because McLennan County and Harris County raise nearly identical arguments in their respective motions for summary judgment and because Breidel asserts most of his claims against all Defendants jointly and severally, the Court proceeds to consider both motions in conjunction for efficiency. Defendants argue that they are entitled to summary judgment on Breidel's claims because they are based on conclusory allegations lacking factual support and because he cannot establish municipal liability under 42 U.S.C. § 1983. In support of its motion, Harris County offers the following three exhibits: (1) the Affidavit of Rosa Ming, Custodian of the Records of the Harris County Sheriff's Office, with Breidel's inmate medical records attached thereto (Doc. 16, Ex A); (2) certified copies of the following documents from Case No. 2004-29323; *In the Interest of Jeremy David Breidel, Hannah Leigh Breidel, and Aidan Jacob Breidel, Minor Children*; in the 245th Judicial District Court for Harris County Texas: Order for Capias for Arrest of Respondent and Agreed Order to Forfeit Bond, Disburse Funds and Declare Incarceration Penalties Satisfied (Doc. 16, Ex. B); and (3) the Affidavit of Harris County Sheriff's Office Captain Ronny Taylor (Doc. 16, Ex. C).

Nowhere does Harris County summarize the contents of the medical records, and many of the notations contained therein are barely legible. Nonetheless, a cursory review of the records reveals that upon his intake into Harris County Jail on January 15, Breidel underwent a

medical and psychological screening evaluation. Doc. 16, Ex. A-1 at 4, 6. The next day he was seen again by the attending physician who wrote in his chart:

> "Pt. recovering well from his operation. Everything looked fine on his 2-week checkup per the pt. [Zero] complaints today other than post-op pain…Plan: 1) to see MH; 2) Hydrocodone 5/500 tab; 3) Tramadol 50 mg…"

Doc. 16, Ex. A-1 at 13. He was also seen by a psychiatrist who prescribed for him a sleep aid and anti-anxiety medication. Doc. 16, Ex. A-1 at 14–15.

The capias warrant for Breidel's arrest was issued on June 10, 2010 after he failed to appear at a duly and properly set hearing. Doc. 16, Ex. B at 1. The clerk set bond for $10,000. *Id.* The Agreed Order to Forfeit Bond, Disburse Funds and Declare Incarceration Penalties Satisfied shows that Breidel was released after he posted bond on January 19, 2011.

McLennan County has not offered any evidence in support of its motion for summary judgment.

### A.   *Summary Judgment Legal Standard*

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. Therefore, the court must not make determinations of credibility or weight and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The substantive law determines which facts are material. *Id.* at 247.

Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). Conclusory allegations unsupported by evidence will not preclude summary judgment. *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ....'" *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson*, 477 U.S. at 247–48. "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999).

**B.     Discussion**

Breidel asserts claims against all Defendants under 42 U.S.C. § 1983 for (1) unreasonable search and seizure; (2) use of excessive force; and (3) failure to protect; and against John Doe, M.D. alone for denial of medical care. Title 42 U.S.C. § 1983 does not grant substantive rights,

but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 226, 271 (1994). It provides a remedy to a person who suffers a deprivation of his rights, privileges, or immunities secured by the Constitution and the laws of the United States by a person acting under color of state law. *Id.* To state a claim under the statute, a plaintiff must prove: (i) the deprivation of a right secured by federal law; (ii) the deprivation occurred under the color of state law; and (iii) the deprivation was caused by a state actor. *Uresti v. Reyes*, 506 F. App'x 328, 329 (5th Cir. 2013) (per curiam) (citing *Victoria W v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004)).

Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity.[2] *See Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). In this action, Breidel expressly sues John Doe, M.D., the doctor at the McLennan County Jail, in his official capacity, John Does 1 and 2, employees of Extradition Transport Services, in their individual or personal capacities, as well as Extradition Transport Services, the McLennan County Sheriff's Office, the Harris County Sheriff's Office, and the Defendant Counties. He conclusorily asserts that "[a]ll of the [D]efendants…are ["]persons["] as defined by law who acted under the color of law…" Doc. 5 at 8.

Personal-capacity suits seek to impose liability upon a government official as an individual, while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). Thus, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165

---

[2] The capacity of an entity to sue or be sued is determined according to state law. Fed. R. Civ. Pro. 17(b)(3).

(1985). In a personal-capacity suit, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

McLennan County moves the Court to dismiss Breidel's claim against John Doe, M.D. under Federal Rule of Civil Procedure 4(m). Doc. 18 ¶ 4. Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Breidel has not served John Doe, M.D., nor has he served Extradition Transport Services, nor John Does 1 and 2. He has not made a showing of good cause for his failure to do so and did not file a response to McLennan County's motion for summary judgment. Accordingly, the Court determines that it is appropriate to dismiss Extradition Transport Services and John Does 1 and 2 with prejudice under to Rule 4(m). The Court, however, does not dismiss Breidel's *claim* against John Doe, M.D. on this basis, as Breidel sues John Doe, M.D in his official capacity and therefore his claim is properly treated as a claim against McLennan County.

Breidel's claims against the McLennan County Sheriff's Office and the Harris County Sheriff's Office must also be dismissed. In the Fifth Circuit, individual municipal departments such as the Harris County Sheriff's Office are not "persons" under 42 U.S.C. § 1983. *Darby v. Pasadena Police Dept.*, 939 F.2d 311 (5th Cir. 1991). Municipalities, however, are considered "persons" that may be sued directly under § 1983. *Monell*, 436 U.S. at 694. Thus, Breidel's claims are properly brought against the Defendant Counties only.

    1.    *Unreasonable Search and Seizure*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons…against unreasonable searches and seizures, shall not be violated…" U.S. CONST. AMEND. IV. "With regard to pretrial confinement, the sole issue under the Fourth Amendment is whether there is probable cause for detaining the arrested person pending further proceedings." *Whittington v. Maxwell*, 455 F. A'ppx 450, 458 (5th Cir. 2011) (internal quotations marks, alterations, and citations omitted). Defendants argue that they are entitled to summary judgment on Breidel's Fourth Amendment claims for unreasonable search and seizure because he does not allege any facts to support his claim and because he was lawfully arrested under a capias warrant. Doc. 16 ¶¶ 18–21; Doc. 16-2. Breidel does not include any additional facts or evidence to support his Fourth Amendment claim in his reply to Defendants' motions. *See* Doc. 19. Viewing the complaint in a light most favorable to Breidel, the Court concludes that the record is devoid of any allegations or evidence that Breidel was subject to an illegal search or seizure in violation of the Fourth Amendment. It is undisputed that Breidel was arrested under a lawful capias warrant for failure to appear at a duly and properly noticed hearing regarding his failure to pay child support. Doc. 16-2. The capias provides that it is to be treated in the same manner as an arrest warrant for a criminal offense throughout the State of Texas. *Id.* Thus, Defendants are entitled to summary judgment on Breidel's Fourth Amendment claims.

  2. *Excessive Force*

The Supreme Court has indicated that the due process clause in the Fifth (or Fourteenth) Amendment is the proper constitutional basis for pretrial detainee excessive force claims. *Graham v. Connor*, 490 U.S. 386 (1989); *Bell v. Wolfish*, 441 U.S. 520 (1979); *see also Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993). In determining whether a pretrial detainee has stated a claim for use of excessive force, courts consider "whether force was applied in a good

faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia*, 981 F.2d at 1446 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Defendants contend that they are entitled to summary judgment on Breidel's claims for excessive force since his complaint does not allege that force was ever used against him either during his arrest or during his detention by anyone acting under color of state law. Doc. 16 ¶¶ 22–24. Again, Breidel does not include any additional facts or evidence to support his claim for excessive force in his reply to Defendants' motions. *See* Doc. 19. Viewing the complaint in a light most favorable to Breidel, the Court concludes that the record is devoid of any allegations or evidence that Defendants used excessive force against Breidel in violation of his Fourteenth Amendment right to due process. Accordingly, Defendants are entitled to summary judgment on Breidel's excessive force claim.

  3. *Failure to Protect*

Like his claim for excessive force, Breidel's claim for failure to protect is properly brought under the Fourteenth Amendment, which "places a duty on the State to protect against harm to persons in its confinement." *Brown v. Harris Cnty., Tex.*, 409 F. App'x 728, 730 (5th Cir. 2010) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). In order to state a claim for failure to protect under § 1983, a plaintiff must show that he was incarcerated under conditions that posed a substantial risk of serious harm and that prison official were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834).

Defendants argue that they are entitled to summary judgment on Breidel's claim for failure to protect because he has not offered any facts to establish municipal liability for his

claim under § 1983. The Court need not reach the issue of whether or not Breidel establishes municipal liability under § 1983 since the Court concludes that Breidel has not alleged facts sufficient to state a plausible claim for failure to protect.[3] Breidel does not allege he was incarcerated in conditions that posed a substantial risk of serious harm, nor does he allege that any jail officials were deliberately indifferent to his need for protection. In fact, Breidel admits in his complaint that he spent the majority of his stay at McLennan County Jail in medical segregation, indicating that jail officials were definitively not indifferent to his needs. Breidel does not specify the basis for his failure-to-protect claim in his complaint or in his reply to Defendants' motions, but viewing Breidel's complaint in a light most favorable to him, the Court finds that the altercation between Breidel and the other inmate, where the other inmate allegedly grabbed Breidel by the neck, is the only possible basis for his failure to protect claim. Breidel does not allege that he was injured in this altercation, and his description of the events suggests that in fact it was Breidel who injured the other inmate. *See* Doc. 5 at 6. It is apparent from Breidel's complaint that he was not faced with a substantial risk of serious harm. Accordingly, the Court grants Defendants' motion for summary judgment on Breidel's claim for failure to protect.

    4.      *Denial of Medical Care*

As previously articulated, although Breidel asserts his claim for denial of medical care

---

[3] In his reply, Breidel attempts to establish municipal liability against Harris County under § 1983 by submitting a letter from the United States Department of Justice to Harris County Judge Ed Emmett, dated June 4, 2009, regarding an investigation into the conditions of the Harris County Jail, conducted pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 (Doc. 19-1), and an article from the Houston Chronicle, dated January 29, 2012, which relies on recent examples of excessive force and unreasonable searches in the Harris County Jail to support a conclusion that the inmates continue suffer under the conditions described in the June 2009 DOJ Letter. Harris County filed a reply to Breidel's response (Doc. 22), styled as "Defendant Harris County's Objections, Motion to Strike and Reply to Plaintiff's Response to its Motion for Summary Judgment." In it, they object to and move to strike both the DOJ Letter and the article from the Houston Chronicle as irrelevant and inadmissible hearsay. Doc. 21. Because the Court concludes that Breidel has failed to allege facts sufficient to support his claim for failure to protect, the Court need not reach the issue of municipal liability under his claim and Harris County's Motion to Strike is rendered moot.

against John Doe, M.D. in his official capacity, a suit against a municipal official in his official capacity is no different from a suit against the municipality itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Breidel's claim is properly brought against McLennan County.

A pretrial detainee's claim for denial of constitutionally adequate medical care also arises under the deprivation of substantive due process under the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1994)). The Fifth Circuit applies the same standard for assessing constitutional claims of denial of medical care to pretrial detainees under the Fourteenth Amendment as it does for denial of medical care to convicted inmates under the Eighth Amendment. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001), *cert denied*, 534 U.S. 1136 (2002).[4] The Eighth Amendment requires that prisoners receive "adequate medical care." *See Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence the deliberate indifferent serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir.), *cert. denied*, —— U.S. ——, 134 S. Ct. 2734 (2014). The Supreme Court explains the test as follows:

> [A] prison official violates the Eighth only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious;" a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities"…The second requirement follows from the principal that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."

---

[4] The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Blank v. Eavenson*, 530 F. App'x 364, 368 n.7 (5th Cir.), *cert. denied*, —— U.S. ——, 134 S. Ct. 623 (2013) (internal quotation marks and citations omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "In order to demonstrate deliberate indifference when alleging inadequate medical treatment, a prisoner must show that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

      McLennan County contends that it is entitled to summary judgment on Breidel's claim for failure to protect because he has not offered any facts to establish municipal liability under § 1983. Again, the Court need not reach the issue of whether or not Breidel establishes municipal liability under § 1983 because the Court concludes that Breidel has not alleged facts sufficient to state a plausible claim under the Fourteenth Amendment for denial of medical care. While it is not in dispute that Breidel's post-surgical condition presented "serious medical needs," it is clear from Breidel's complaint that McLennan County officials were not "deliberately indifferent" to those needs. In his complaint, Breidel admits that the was consistently allowed to wear his neck brace and, at times, his bone stimulator; he was seen by John Doe, M.D. at least twice; and he spent the majority of his stay at McLennan County jail in medical segregation. *Id.* at 2–3.

Furthermore, Breidel states in his complaint that Defendant John Doe, M.D. "acted with gross negligence under color of law in depriving Breidel of his needed and prescribed medications." *Id.*  Gross negligence will not suffice to violate the due process rights of pretrial detainee.  *Hare*, 74 F.3d at 645.  Accordingly, McLennan County's motion for summary judgment is granted as to Breidel's claim for denial of medical care.

IV. **Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant McLennan County's Motion to Dismiss for Improper Venue, Alternative Motion to Transfer Venue, and Alternative Motion to Dismiss for Failure to State a Claim (Doc. 9) is **DENIED**.  It is further

**ORDERED** that Defendant Harris County's Motion for Summary Judgment (Doc. 16) is **GRANTED** and Defendant McLennan County's Motion for Summary Judgment (Doc. 18) is **GRANTED**.  Briedel's case is **DISMISSED**.  Defendant Harris County's Motion to Strike (Doc. 21) is moot.

Final judgment will be entered by separate document.

SIGNED at Houston, Texas, this 6th day of August, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE